# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| **DANA KEITH WOODS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:15-cv-01207-STA-egb** |
| | ) | |
| **MICHAEL PARRIS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER DENYING § 2254 PETITION, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

In January 2016, Petitioner Dana Keith Woods, a Tennessee state prisoner, filed an amended *pro se* habeas corpus petition (ECF No. 12) under 28 U.S.C. § 2254 (the "Amended Petition"). For the reasons that follow, the Amended Petition is **DENIED**.

## BACKGROUND

### I.     State Proceedings

The following background summary is drawn from the state court record (ECF No. 20), the decision in Woods's direct appeal, *State v. Woods*, 2007 Tenn. Crim. App. LEXIS 957 (Tenn. Crim. App. Dec. 26, 2007), *perm. appeal denied* (Tenn. May 27, 2008), and the decision in his appeal from denial of post-conviction relief. *Woods v. State*, 2014 WL 5465867, (Tenn. Crim. App. Oct. 28, 2014), *perm. appeal denied* (Tenn. Mar. 16, 2015).

On December 6, 2004, a grand jury of Madison County, Tennessee, returned an indictment charging Petitioner with first degree murder, felony murder, aggravated burglary, especially aggravated kidnapping, aggravated assault, and attempt to commit first degree murder.

Technical R. W2006-00657-CCA-R3-CD, vol. 1, at 7–14, Oct. 6, 2006, ECF No. 20-1. At Petitioner's jury trial, Ms. Gwendolyn Steele, who lived in Jackson, Tennessee, testified that she had dated Woods for several months in 2004. *Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *7–8. They became engaged, but she broke off the engagement in June of that year. *Id.* at *8. She also testified that, on the morning of August 23, 2004, she "was working at her part-time job at a funeral home" when Woods appeared. *Id.* at *2. "A brief conversation ensued." *Id.* Petitioner called her later that day while she was working at her full-time hospital job to ask her if she wanted anything to eat, and she declined. *Id.* at *2–3. Steele worked until 7:30 p.m. and returned home to find her friend Terry Dixson sitting on her front porch, with his car parked in front of her house. *Id.* at *3.

Dixson and Steele spent the evening together at Steele's house. *Id.* At around 10:00 p.m., they were lying in bed talking and laughing. *Id.* According to Steele, Dixson had his shirt off but was wearing pants, and he had the blanket pulled up to his waist. *Id.* She testified that Woods appeared at her bedroom door and, when she asked him what he was doing in her house, he "said something smart." *Id.* at *4. Woods then "turned like he was going to leave," but he "turned immediately back around and . . . started shooting." *Id.* He fired six or seven shots. *Id.* Petitioner then pulled Steele across the bed and through the house to his Ford Explorer, which was parked behind the residence. *Id.* In response to her pleas that "she did not want to go," Woods told her that, "if she did not comply, he would shoot her again." *Id.*

Steele testified that, while Woods was "driving around Jackson," she "noticed blood on her shirt, and . . . 'could feel blood dripping from [her] chest.'" *Id.* at *4–5 (alteration in original). Although she was telling herself "to pull back or to open the door with this hand[,] . . . [she] couldn't use it." *Id.* at *5 (second alteration in original). Woods eventually stopped the

vehicle at his house. *Id.* At that point, Steele asked to go the hospital, but Woods ignored the request and went inside his house. *Id.* "By the time [Steele] got the vehicle door open and made it to the front porch [of the residence], the Defendant was already exiting the house, and he ordered her to get back inside the vehicle." *Id.* He then pushed her into the car. *Id.* He drove back to Steele's house and "quickly went inside." *Id.* After leaving the residence, he drove himself and Steele to a gas station, at which time Steele noticed a gun tucked under his belt. *Id.*

Steele's further testimony, along with the testimonies of other witnesses, established that Woods drove to Memphis, where he and Steele entered his cousin's house; drove back to Jackson and "past Ms. Steele's house"; called Steele's niece, but received no answer; drove to his niece's house, but did not enter the residence; drove to his nephew's house, but was unable to get inside; drove near his own house, where "police cars [were] 'lined along the street'"; "drove to Interstate 40 and proceeded to the Brownsville area"; and then "exited the Interstate . . . and went back to Jackson." *Id.* at *5–7. Steele testified that she again asked Woods take her to the hospital without success. *Id.* at *6.

After receiving a phone call from his mother informing him "that the police were at his house," Woods told Steele he was "going to 'turn hi[m]self in.'" *Id.* at *7. He then drove Steele "to one of the residences they had visited earlier in the evening." *Id.* He ordered her to go inside the house with him, where they encountered a man named Gary. After refusing to let Petitioner leave the house with Steele, Gary called the authorities. Woods left the house and "emergency personnel arrived to assist Ms. Steele." *Id.* Steele underwent surgery to remove a bullet from her wrist. *Id.* She also "required . . . surgeries to her right shoulder due to a gunshot wound." *Id.* "[T]wo bullets remained in her body at the time of trial." *Id.*

Steele testified that she changed the locks to her house prior to August 23, 2004, after learning that Petitioner had a key to her house. *Id.* at *8. She stated that she did not give him a key to the new locks, that her house was locked on the night of the crimes, and that she did not give him permission to enter her house that night. *Id.* at *4, 8.

An autopsy revealed that Terry Dixson died from gunshot wounds to the head. Tr. of Evid., vol. 5, 651:20–23, Oct. 13, 2005, ECF No. 20-7. A special agent from the Tennessee Bureau of Investigation testified that bullet fragments recovered from the victims were consistent with a .22 caliber weapon. *Id.* at 536:22–544:10. "A 'Remington 22 short cartridge case . . . was . . . identified as recovered from [Woods'] vehicle,'" and "a 'rifle casing . . . CCI 22 standard' was found at" one of the homes Woods drove to after the shootings. *Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *12 (omission in original).

Testimony established that an air conditioner was found on the ground at Steele's house, below an open window. *Id.* at *9. A gas meter near the window looked as if someone had stepped on it, but it was not possible to lift a shoe print from the meter. *Id.* at *10–11; Tr. of Evid., vol. 4, 430:24–431:13, Oct. 11, 2005, ECF No. 20-6.

Petitioner's friend testified that "he was with the Defendant on August 23 just prior to the shooting." *Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *11. After working on Woods's vehicle, the two men "had a couple of drinks." *Id.* Petitioner drank "vodka mixed with cranberry juice in 'large size glasses, maybe twelve ounces[,]' and he consumed 'probably more than' two drinks and 'maybe' as many as five." *Id.* at *25.

Defense counsel's request for a jury instruction on voluntary intoxication was denied. Tr. of Evid., vol. 6, 779:23–780:10, Oct. 13, 2005, ECF No. 20-8. Counsel argued at closing that Petitioner did not act with premeditation but shot the victims because he was provoked by the

sight of his fiancée in bed with another man.  Tr. of Evid., vol. 7, 825:9–827:10, 828:4–830:19, 833:15–835:14, 837:17–838:24, Oct. 13, 2005, ECF No. 20-9.

The jury found Woods guilty of all crimes charged.  "The trial court merged the convictions for first degree premeditated murder and felony murder and also merged the convictions for attempted first degree murder and aggravated assault."  *Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *27.  Woods "received an effective sentence of life without the possibility of parole plus fifty years."  *Id.* at *1–2.

Petitioner took an unsuccessful direct appeal to the Tennessee Court of Criminal Appeals (the "TCCA") challenging, among other things, the sufficiency of the evidence to support the convictions for first degree murder, attempted first degree murder, aggravated burglary, and especially aggravated kidnapping.  *Id.* at *2.  The Tennessee Supreme Court denied permission to appeal.  Order, May 27, 2018, ECF No. 20-20.

Petitioner subsequently filed a state *pro se* post-conviction petition.  Technical R. No. C-09-10, at 1, Feb. 11, 2011, ECF No. 20-21.  The post-conviction court appointed Petitioner's appellate attorney to represent him.  *Id.* at 50.  The court held evidentiary hearings (ECF Nos. 20-23, 20-24, & 20-27) on January 8, March 22, and August 16, 2010, and denied relief on October 26, 2010.  Technical R. No. C-09-10, at 58–59, ECF No. 20-21.  Petitioner appealed. The TCCA remanded the case "for a hearing to determine whether the Petitioner waived any conflict of interest with appellate counsel."  *Woods*, 2014 WL 5465867, at *8.  "The court noted that if the Petitioner did not waive the conflict, [he] should be allowed to amend his post-conviction petition to include any cognizable grounds for relief which may have arisen during the filing of the direct appeal."  *Id.* (internal quotation marks omitted).

After remand, newly appointed counsel "did not file an amended petition raising any additional issues." *Id.* The court held an evidentiary hearing on December 13, 2011, "at which the Petitioner presented additional testimony alleging that trial counsel was ineffective." *Id.* The court construed Petitioner's motion to reconsider as an amended petition "and denied relief in a written order entered on February 3, 2012." *Id.* Petitioner once again appealed.

The TCCA granted the State's motion for remand for the purpose of taking additional evidence. *Id.* at *9. After remand, the lower court appointed new counsel, who subsequently amended the petition. *Id.* The court held an evidentiary hearing (ECF No. 20-26) on August 1, 2013, and denied relief on September 4, 2013. W2010-02409-CCA-R3-PC, at 142–43, Nov. 22, 2013, ECF No. 20-22. Woods appealed, and the TCCA affirmed. *Woods*, 2014 WL 5465867, at *14.

## II. Federal Habeas Petition

In August 2015, Woods filed his *pro se* habeas corpus petition under 28 U.S.C. § 2254 (ECF No. 1). On January 5, 2016, he filed the Amended Petition in compliance with the Court's Order to file a legible petition on the Court's official form. The Amended Petition presents the following claims:

Claim 1: The trial court erred in admitting photographs of the murder victim.

Claim 2: Petitioner's convictions are based on insufficient evidence.

Claim 3: The trial court erred in failing to instruct the jury on voluntary intoxication.

Claim 4: The trial court erred in imposing consecutive sentences.

Claim 5: Trial counsel was ineffective "in failing to investigate the case by failing to present important key defense witnesses at trial."

Claim 6:  Trial counsel was ineffective by failing to object to Ms. Steele's "perjured testimony at trial."

Claim 7:  Trial counsel was ineffective by failing to object to the introduction of the shell casing found in Petitioner's vehicle.

Claim 8:  Trial counsel was ineffective by failing to call certain witnesses at trial, namely Gary Phelps, Ricky Love, and Kip Cole.

Claim 9:  Trial counsel was ineffective in his opening statement.

Claim 10:  Trial counsel was ineffective by failing to introduce expert fingerprint evidence regarding the air conditioner.

## STANDARDS OF LAW

### I.      Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorrisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)) (citation omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *See id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 11, 14, 17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## II.      Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting

*Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### III. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19.

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

## DISCUSSION

Respondent Mike Parris has filed the state-court record (ECF No. 20) and an Answer to the Amended Petition (ECF No. 21). He argues that most of the claims are procedurally defaulted, and that the remaining claims are without merit. Petitioner filed a Reply to Respondent's arguments (ECF No. 25).

## I.     Procedurally Defaulted Claims

Upon review of the state court record and the parties' arguments, the Court finds that seven of Petitioner's ten claims are procedurally defaulted, and that the defaults are unexcused. The claims are therefore not subject to federal habeas review.

### A.     Claims 1, 3, and 4

Petitioner asserts that the trial court erred by admitting a photograph of the murder victim (Claim 1), failing to instruct the jury on a voluntary intoxication defense (Claim 3), and imposing consecutive sentences (Claim 4). Respondent argues that the claims are procedurally defaulted because Petitioner did not exhaust them in the state courts. He correctly points out that Petitioner raised the claims in his direct appeal, but on state law grounds only. *See* Br. Of Appellant, at 6, Apr. 24, 2017, ECF No. 20-16.

In his reply, Petitioner concedes that the claims are defaulted "and are now barred from review by [the] [C]ourt." Pet'r's Reply to the Resp.'s Answer to the Pet. For Writ of Habeas Corpus, at 3, May 31, 2016, ECF No. 25 [hereinafter "Pet'r's Reply"]. Claims 1, 3, and 4 are therefore **DISMISSED**.

### B.    Claim 6

In Claim 6, Petitioner contends that "[t]rial counsel was constitutionally deficient in failing to object to Gwendolyn Steele's . . . perjured testimony that she was 'at work at the funeral home['] on the day of the crime and that the Petitioner encountered her there." Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 18, Jan. 5, 2016, ECF No. 12 at 18 [hereinafter "Am. Pet."]. He alleges that the testimony was "false and that counsel should have objected to it and impeached Ms. Steele's credibility before the jury by producing a proof (such as a sworn affidavit from Ralph Mercer, the owner of the funeral home)." *Id.*

Respondent argues that the Court cannot review the claim because Petitioner procedurally defaulted it. Petitioner replies that the claim is subject to federal habeas review because he "presented [it] to [the] state court and exhausted [it] through at least one round of appeals." Pet'r's Reply, at 4.

Although Woods raised the claim in a supplemental brief in his post-conviction appeal, Exhibits O, at 2–5, Aug. 19, 2015, ECF No. 2-2, the TCCA held that he waived the issue. *Woods*, 2014 WL 5465867, at *14. Applying TCCA Rule 10(b), the court found that the "supplemental brief fail[ed] to support [the] grounds for relief with argument, citation to authorities, or references to the record." *Id.* (citing Tenn. Ct. Crim. App. R. 10(b)).

Rule 10(b) provides that "'[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.'" *Id.* (quoting Tenn. Crim. App. R. 10(b)). The Sixth Circuit has held that the rule is an independent and adequate state ground that may foreclose federal habeas review of a claim. *See Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013) (citing *Middlebrooks v. Bell*, 619 F.3d 526, 535–36 (6th Cir. 2010)). As a consequence, Claim 6 is procedurally defaulted.[1]

Petitioner argues that the default is excused pursuant to *Martinez*, 566 U.S. at 9. Pet'r's Reply, at 4. The argument is without merit because the default occurred at the appellate level. The "assertion that ineffective assistance of postconviction appellate counsel [can] serve as cause" to excuse the default of an ineffective-assistance-of-trial-counsel claim "is firmly foreclosed by Supreme Court and Sixth Circuit precedent." *Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 742–53; *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)).

Claim 6 is therefore **DISMISSED**.

## C.      Claims 7, 9, and 10

Petitioner asserts in Claim 7 that trial counsel rendered ineffective assistance by failing to "object[] to the introduction of a shell casing that was found in his truck that did not match the

---

[1]   The TCCA also found that Petitioner waived the claim because he "did not raise [it] in his petition and [it was] not considered by the post-conviction court." *Woods*, 2014 WL 5465867, at *14. The post-conviction record suggests that Petitioner did, in fact, litigate this claim in the post-conviction trial court. *See* Tr. of Evid., at 3:17–13:17, ECF No. 20-27 (transcript of hearing relating to Mercer's sworn affidavit that Steele was not at the funeral home on the day of the shooting). Because the TCCA found that the deficiencies in Petitioner's supplemental brief were reason enough to deem the claim waived, the Court need not consider the TCCA's second ground for waiver.

bullet that struck the victim."[2]  Am. Pet., at 18.  In Claim 9, he argues that counsel rendered ineffective assistance by "admitting" in his opening statement to the jury that Woods shot the victims.  *Id.* at 19.  He asserts in Claim 10 that trial counsel was ineffective by failing to introduce expert evidence regarding the fingerprints found on the air conditioner.  Respondent argues that the claims are procedurally defaulted.  The Court agrees.

Woods raised and litigated all three claims in the post-conviction trial court.  W2010-02409-CCA-R3-PC, at 129, ECF No. 20-22; Tr. of Evid., at 29–33, ECF No. 20-26.  He did not, however, raise them on appeal from the denial of post-conviction relief.  *See* Br. of Appellant, at 23–25, Jan. 17, 2014, ECF No. 20-39.  The time for doing so has passed.

Relying on *Martinez*, Petitioner argues that the ineffective assistance of post-conviction counsel excuses the defaults.  Pet'r's Reply, at 16–17.  The argument is without merit.  The defaults occurred at the appellate level and, as noted, the ineffective assistance of post-conviction appellate counsel cannot serve to excuse the default of an ineffective-assistance-of-trial-counsel claim.  *See Young*, 702 F. App'x at 268.

Claims 7, 9, and 10 are **DISMISSED**.

## II.    Merits Review of Claim 2

Petitioner asserts that the evidence was insufficient to convict him of (1) the first degree murder of Dixson because "the evidence merely established guilt for the lesser-included offense of Voluntary Manslaughter"; (2) the attempted first degree murder of Steele because her "gun shots wounds . . . were not life threatening and Petitioner never tried to kill her"; (3) the

---

[2] In his supplemental brief to the TCCA, Petitioner raised a similar but not identical claim:  that counsel was ineffective for "failing to present proof to the jury that the shell casings found in the bed of [his] truck did not match the shell casings used to the commit the crime." *Woods*, 2014 WL 5465867, at *14.  *See also* Exhibits O, at 4–5, ECF No. 2-2.  The TCCA found that the claim was waived because the supplemental brief was without citation to the record or legal authority.  *Woods*, 2014 WL 5465867, at *14.

especially aggravated kidnapping of Steele "because [she] was left alone several times and never fled or attempted to flee when she otherwise could have"; and (4) aggravated burglary because "Petitioner's fingerprints were not found on the 'air-conditioner,'" "[n]o proof was presented that [he] entered the home with any felonious intent," and "any intent was formed after [he] saw the victim lying in the bed with [his] fiancé[e]." Am. Pet., at 7.

The claim is properly before this Court because Woods raised it on direct appeal. *See Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *17–18. He now asserts that the TCCA's decision denying relief on the claim does not survive AEDPA review.

Addressing Petitioner's evidence-sufficiency claim, the TCCA described the governing legal standards, in part, as follows:

> This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.

*Id.* (citations omitted). Because the appellate court correctly identified the evidence-sufficiency standards set forth in *Jackson* and applied them to the facts of Petitioner's case, its determination that the evidence was sufficient to support the convictions is not "contrary to" controlling Supreme Court. *See Williams*, 529 U.S. at 406 ("A run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

As to each of the convictions under consideration, the Court also finds that the TCCA's factual determinations, and its application of *Jackson*'s standards to those facts, are not unreasonable.

### A.    First Degree Murder of Dixson

To convict Petitioner of first degree premeditated murder, the jury had to find that he intentionally and with premeditation killed Dixson. *See Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *18 (defining first degree murder "as the 'premeditated and intentional killing of another.'") (quoting Tenn. Code Ann. § 39-13-202(a)(1)). "To be premeditated, the intent to kill must have been formed before the act itself, and the accused must be sufficiently free from excitement and passion." *Id.* (citing Tenn. Code Ann. § 39-13-202(d)).

Viewing the evidence in the light most favorable to the prosecution, the TCCA found that Petitioner "parked his vehicle behind [Ms. Steele's] residence," "procured a weapon," "removed the air conditioner from a window," entered the home, "approached the bedroom, opened the door, . . . pulled out the weapon," faced the unarmed Dixson, and, although having turned to leave, "'turned immediately back around'" and shot the victim several times. *Id.* at *19–20.

These factual findings are supported by the record and are presumed to be reasonable. *See Ayers*, 623 F.3d at 308. Petitioner has not rebutted the presumption with clear and convincing contrary evidence. He therefore has not established that the findings are unreasonable.

Based on Petitioner's conduct, the TCCA concluded that a rational juror could find that his killing of Dixson was premeditated. *Woods*, 2007 WL 4530818, at *20. That determination does not reflect an unreasonable application of *Jackson*'s standards to the facts. The jury was faced with ample evidence of premeditation, which included "preparations before the killing for

concealment of the crime," entering the house with a gun, and turning back around to shoot "an unarmed victim." *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997) (citations omitted); *see also State v. Dickson*, 413 S.W. 3d 735, 746 (Tenn. 2013) (finding sufficient evidence of premeditation where, among other things, the shooter "went to the cabin with a loaded gun" and, "after pausing," shot the "unarmed victim").

Petitioner points out that there was evidence in the record to support the defense theory that he acted in a state of passion—namely, that he and Steele had "numerous phone conversations . . . leading up to the events of August 23rd," and that, on that night, he encountered Steele in bed with another man. Pet'r's Reply, at 6. Those pieces of evidence, he argues, establish that the shootings were the result of adequate provocation. *Id.* He contends that the TCCA's evidence-sufficiency determination was therefore unreasonable.

The argument is without merit. At closing, defense counsel directed the jury's attention to the evidence supporting adequate provocation. Tr. of Evid., vol. 7, 834:1–12, ECF No. 20-9 ("This woman that he's been talking to over and over, he still thinks he has a relationship with her and has good reason to think so and he hears laughter in there. They're joking around back and forth and what's the first that you see when you look through that door and you see this man lying in bed. . . . He's clearly naked."). Faced with evidence supporting the defense theory of adequate provocation, as well as evidence of premeditation, the jury resolved the competing inferences in the State's favor. Consistent with *Jackson*'s commands, the appellate court deferred to "the responsibility of the jury . . . to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 2 (citing *Jackson*, 443 U.S. at 319).

The TCCA's determination that the evidence was sufficient to support the conviction for first degree premeditated murder was not unreasonable.

### B.  Attempted First Degree Murder of Steele

To convict Petitioner of the attempted first degree murder of Steele, the "State [had to] prove the elements of first degree murder and criminal attempt." *Woods*, 2007 Tenn. Crim. App. LEXIS 957, at *20.  In Tennessee, "criminal attempt requires that one act 'with the kind of culpability otherwise required for the offense . . . and with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.'" *Id.* at *20–21 (quoting Tenn. Code Ann. § 39-12-101(a)(3)) (alterations omitted).

Viewing the evidence in the light most favorable to the prosecution, the TCCA found that Petitioner "parked behind Ms. Steele's residence, removed the air conditioner, . . . entered her home" with a gun, proceeded to her bedroom, and "shot [her] three times." *Id.* at *21.  "He then dragged her out of the house and refused to allow her to seek medical treatment, driving her around for hours." *Id.*

These factual findings are supported by the record and are presumed to be reasonable. Petitioner has not rebutted the presumption with clear and convincing contrary evidence. Accordingly, he has failed to show that the factual findings are unreasonable.

Based on those facts, the appellate court held that a rational juror could find Woods "guilty of attempted first degree murder beyond a reasonable doubt." *Id.*  Petitioner's argument that this conclusion is unreasonable because Steele's "gun shots wounds . . . were not life threatening and Petitioner never tried to kill her," is unavailing for two reasons.

First, "serious bodily injury is not an element of the offense of attempted first degree murder." *Griggs v. State*, 2018 Tenn. Crim. App. LEXIS 47, at *10 (Tenn. Crim. App. Jan. 23, 2018) (citing Tenn. Code. Ann. §§ 39-12-101(a), 39-13-202(a)).

Second, to the extent the nature of the injuries could support a defense theory that Woods did not intend to kill Steele, Steele's testimony tended to undermine that theory. The victim stated that she "put [her] hands up" when the shooting began, and received gunshots wounds to the wrist, upper left torso near the collarbone, and "in [her] arm in between [the] elbow and [the] shoulder." Tr. of Evid., vol. 1, 75:6–12, 131:15–132:17, Oct. 11, 2005, ECF No. 20-3. The prosecutor noted at closing that Petitioner "shot [Steele] all in the upper torso area in the arm as she was blocking the shots, [and] in the shoulder[,] . . . . [a]ll in an area where those bullets could have killed her had they struck in a different spot." Tr. of Evid., vol. 7, 846:15–21, ECF No. 20-9. The jury weighed all of the evidence and was persuaded that Petitioner intended to kill Steele. The TCCA cannot be faulted on federal habeas review for refusing to override the jury's resolution of the competing inferences. *See Cavazos*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326) (noting that *Jackson* "unambiguously instructs that a reviewing court . . . must defer to" the jury's resolution of "conflicting inferences" and holding that the federal habeas court was required to apply "deference to [the] state court decision[]" in that respect).

The state appellate court's determination that the evidence was sufficient to support the attempted murder conviction is therefore not unreasonable.

### C.    Especially Aggravated Kidnapping of Steele

In Tennessee, "'[o]ne is guilty of especially aggravated kidnapping when that person 'knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty' and the crime is 'accomplished with a deadly weapon . . . .'" *Woods*, 2007 Tenn.

Crim. App. LEXIS 957, at *22–23 (quoting Tenn.Code Ann. §§ 39-13-302(a), -305). In Woods's appeal, the TCCA held that "there [was] sufficient evidence for a reasonable jury to determine beyond a reasonable doubt that the Defendant committed the crime of especially aggravated kidnapping." *Id.* at * 24.

> The court reasoned as follows:
>
> Ms. Steele testified that, after the shots were fired, she began screaming. The Defendant grabbed her by the arm and pulled her across the bed. Ms. Steele had been shot three times and was taken against her will from her home. She pleaded with the Defendant that she did not want to go; however, the Defendant told her "to come on" and, if she did not comply, then he would shoot her again. According to Ms. Steele, she believed the Defendant to be in possession of the gun "the whole time" they drove around that evening, and she was afraid of him. The Defendant refused to provide Ms. Steele with medical treatment. She confirmed that she did not voluntarily go with the Defendant and that she did not feel free to go anywhere else. Ms. Steele only received treatment when "Gary" intervened.

*Id.* at *23–24. Petitioner fails to establish that the appellate court's conclusion, and the factual findings on which it was based, are unreasonable. First of all, he does not identify any clear and convincing evidence to undermine the factual determinations. Secondly, the evidence highlighted by the TCCA gives rise to the reasonable inference that Woods substantially interfered with Steele's liberty. *See e.g.*, *State v. Day*, 1997 Tenn. Crim. App. LEXIS 1268, at *9–10 (Tenn. Crim. App. Dec. 16, 1997) (holding the evidence was sufficient to convict the defendant of especially aggravated kidnapping where he "possessed a gun, revealed it to [the victim]," "threatened to kill [the victim] if she would not get into his car," and "shoved her into the car and kept her captive while he drove around the city.").

Woods's argument that the TCCA's decision is unreasonable because the evidence also shows that he "left [Steele] alone several times" and she "never fled or attempted to flee," is without merit. Although the evidence Petitioner identifies supports the defense theory that Steele

was free to leave, the jury was also faced with evidence supporting the contrary theory. The jury resolved the competing inferences in the State's favor, and the TCCA gave "full play" to the jury's decision. *Jackson*, 443 U.S. at 319.

The appellate court's evidence-sufficiency determination is therefore not unreasonable.

### D.    Aggravated Burglary

For the jury to convict Petitioner of aggravated burglary, it must have found that he entered Ms. Steele's home "without [her] effective consent," and with "the intent to commit a felony, theft or assault, or [did] commit or attempt to commit a felony, theft or assault." *Woods*, Tenn. Crim. App. LEXIS 957, at *21–22 (citing Tenn. Code Ann. §§ 39-14-402, -403).

The TCCA determined that the evidence was sufficient to support Woods' conviction for aggravated burglary. *Id.* at *22. Noting that it had "already determined the existence of premeditation," the court rejected Petitioner's argument that he "only formed felonious intent once he witnessed Ms. Steele and Mr. Dixson occupying the same bed." *Id.* The court also held that the evidence, viewed in the light most favorable to the State, showed that Petitioner entered Steele's home without her consent:

> Ms. Steele testified that the Defendant did not have her consent to enter her home and that the doors to her home were locked. An air conditioner was found on the ground outside a window of Ms. Steele's residence. Next to the window was a gas meter, and the gas meter "appeared to have been disturbed and on the top as though just stepped up onto it." Ms. Steele had previously had her locks changed when she discovered the Defendant had a key to her home. The Defendant entered the residence armed and shot Mr. Dixson and Ms. Steele. He then forcibly removed Ms. Steele from the residence. The evidence was sufficient to prove the elements of aggravated burglary.

*Id.* Woods takes issue with the TCCA's conclusion that the evidence was sufficient to establish that he entered Steele's home with the intent to commit a felony or assault, and that he entered without her consent. This Court has already held that the appellate court's determination that the

evidence was sufficient to support the jury's finding of premeditation to commit murder was not unreasonable. Therefore, the same ruling supports the TCCA's conclusion that the evidence was sufficient to support the jury's determination that Petitioner intended to commit a felony or assault in Steele's home.

In addition, the evidence-sufficiency ruling is not rendered unreasonable, as Petitioner argues, by the fact that his "fingerprints were not found on the 'air-conditioner.'" Am. Pet., at 7. Notwithstanding the absence of fingerprint evidence, the jury was presented with evidence from which it could infer that Woods entered the home through the window: the air conditioner was on the ground below the window, the gas meter next to the window looked as if someone had stepped on it, and the window was open. Tr. of Evid., vol. 3, 384:24–385:13, 389:4–393:13, Oct. 11, 2005, ECF No. 20-5; Tr. of Evid., vol. 4, 436:6–20, ECF No. 20-6.

In addition, Steele testified that she had changed the locks to her house upon learning that Woods had a copy of her house key, that she did not give him keys to the new locks, that her doors were locked on the night of the murder, and that she did not give him consent to enter her house that night. Tr. of Evid., vol. 1, 48:6–50:5, 136:1–14, ECF No. 20-3. The jury implicitly credited her testimony, and the appellate court, consistent with *Jackson*'s commands, did not disturb that credibility decision. *See Jackson*, 443 U.S. at 319. The TCCA's decision to defer to the jury is itself entitled to deference by this Court. *See generally Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

The TCCA's determination that the evidence was sufficient to convict Petitioner of aggravated burglary, and the factual determinations upon which that ruling is based, are therefore not unreasonable.

For all of these reasons, Claim 2 is **DENIED**.

## III. Merits Review of Claims 5 and 8

In Claim 5, Petitioner asserts that his trial counsel rendered ineffective assistance by "fail[ing] to present the Petitioner's mother, May Woods, the Petitioner's brother Rory Woods, and the Petitioner's sister-in-law Pamela Woods" as witnesses at trial. Am. Pet., at 14. In Claim 8, he asserts that counsel was ineffective by "failing to call . . . Gary Phelps and Kip Cole," who would have testified that "Steele was 'seeing' other people at the time of the homicide." *Id.* at 18. He argues that their testimonies were "important for his defense to show that 'other people' had potential motivation to come in and do harm to the victims as a result of passion and jealousy." *Id.* at 18–19. He also asserts that counsel should have called Ricky Love because Ricky "would have testified that the Petitioner never had a gun when he and Ms. Steele came into his store during the alleged kidnapping." *Id.* at 19.

The claims are properly before this Court, as Woods raised them in an unsuccessful appeal from the denial of post-conviction relief. Br. of Appellant, at 20, Jan. 17, 2014, ECF No. 20-39; *see also Woods*, 2014 WL 5465867, at *13. A review of the record and the TCCA's decision reveals that Petitioner is not entitled to federal habeas relief on these claims.

The TCCA began its discussion by identifying the governing standards for ineffective-assistance-of-counsel claims:

> In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. . . . A petitioner successfully demonstrates deficient performance when the clear and convincing evidence

proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"

*Id.* at *10–11 (citations omitted). The appellate court reviewed the post-conviction evidence regarding counsel's alleged ineffectiveness. At the January 2010 hearing, May Woods testified that, if she had been called as a witness at the criminal trial, she would have testified that Petitioner and Steele were "seeing each other." *Id.* at *5. She also would have testified that her son was at her house most of the day on August 23, 2004, and that he left in the evening and "took his truck." *Id.* She further "stated that she did not see Ms. Steele in his truck, and Ms. Steele did not come to her door to ask for help." *Id.* at *13. She explained that she "did not know that Ms. Steele was with Petitioner" on the night of the shootings "until Ms. Steele testified as much at Petitioner's trial." *Id.* at *5. Rory Woods testified that, if counsel had called him as a witness at the criminal trial, he would have testified that his brother "and Ms. Steele were engaged at the time of the shooting," and that he and his wife were "with the couple 'when they purchased the ring.'" *Id.* at *6. He also testified that "Steele was 'flirtatious' and he would not have been surprised to learn that she was 'seeing' other men." *Id.* Pamela Woods "testified that the Petitioner and Ms. Steele were 'planning to get married,'" and that she was with them and her husband when the rings were purchased. *Id.*

At the evidentiary hearing on August 1, 2013, Petitioner did not call Phelps, Love, or Cole as witnesses to testify as to what they would have stated if they had been called as witnesses at the criminal trial. Petitioner's trial counsel, Marty McAfee, testified that prior to trial he "attempted to locate Gary Phelps but was unable to find him." *Id.* at *9. He did not

remember a man named Ricky Love, but he recalled that he interviewed employees on duty at the convenience store service station at the time Woods was there. *Id.*

The TCCA rejected Petitioner's claim that counsel was ineffective for failing to call the six individuals as witnesses in his defense. *Id.* at *13. It noted that three of the witnesses— Love, Cole, and Phelps—were not presented at the post-conviction hearing, although the lower court had granted "numerous continuances to enable the Petitioner to locate" them. *Id.* In the absence of their testimonies, the court held, it was not possible to establish that the witnesses "could have been discovered but for counsel's neglect in his investigation of the case," or that counsel's failure to call them prejudiced the defendant. *Id.* (quoting *Black v. State*, 794 S.W. 2d 752, 757 (Tenn. Crim. App. 1990)).

With regard to the "three witnesses that [did] testif[y] at the evidentiary hearing," the appellate court found that "Rory and Pamela could only testify about the relationship between the Petitioner and [Steele] but had no information about the events of the night of the shooting." *Id.* As for May, "she testified that the Petitioner and Ms. Steele were 'seeing each other,' but offered very little testimony about the night of the shooting." *Id.* In addition, she admitted "that she did not see Ms. Steele in his truck, and Ms. Steele did not come to her door to ask for help." *Id.*

Finding, therefore, that "the testimony of May, Rory, and Pamela offer[ed] little, if any, weight to the Petitioner's defense," the TCCA affirmed the lower court's determination that counsel was not ineffective for failing to call these individuals as witnesses. *Id.* at *14. The court also noted that "Petitioner [had] failed to ask trial counsel why he did not call May, Rory, or Pamela to testify at trial." *Id.* It held that, in the absence of "counsel's testimony on this issue," the court could only "speculate about the reasoning behind [counsel's] decision and

whether any prejudice resulted from [counsel's] actions." *Id.* (quoting *Steven James McCain v. State,* 2014 WL 3659976, at *12 (Tenn. Crim. App. July 23, 2014)) (alteration in original).

Petitioner has not shown that he is entitled to relief on Claims 5 and 8. To begin with, the TCCA's ineffective-assistance determination is not contrary to clearly established Supreme Court law because the court applied *Strickland*'s standards to the facts before it. *See Williams*, 529 U.S. at 406.

The decision is also not based on an unreasonable determination of the facts. As noted, the TCCA found that Cole, Love, and Phelps did not testify before the post-conviction trial court, and that counsel did not testify as to why he did not call May, Rory, and Pamela as witnesses. Each of those determinations "is itself a finding of fact, which is presumed to be correct under the AEDPA absent clear and convincing evidence to the contrary." *Kestner v. Lafler*, 2011 WL 8004777, at *17 (W.D. Mich. Dec. 29, 2011) (citing 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546 (1981)), *report and recommendation adopted*, 2012 WL 2120000 (W.D. Mich. June 11, 2012). Petitioner has not identified any clear and convincing contrary evidence. In addition, this Court's independent review of the post-conviction hearing transcripts confirms that Cole, Love, and Phelps did not testify, and that counsel did not explain why he did not put May, Rory, and Pamela on the stand.

Finally, the TCCA's conclusion that counsel was not ineffective in failing to call the six individuals as witnesses is not an unreasonable application of *Strickland*'s principles to the facts. With regard to Love, Cole, and Phelps, the absence of their testimonies in the post-conviction record means that Petitioner did not prove that they would have been material witnesses for the defense. He therefore did not establish a deficiency in counsel's performance or that counsel's conduct prejudiced him. *See e.g.*, *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio

2009) (holding that petitioner's failure to present evidence that a witness's "testimony would have benefitted" him was "fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different"), *aff'd*, 699 F.3d 908 (6th Cir. 2012).[3]

The TCCA's determination with regard to May, Rory, and Pamela, is also patently reasonable. In *Hutchinson v. Bell*, the Sixth Circuit held that, where "[t]here is nothing in the record indicating defense counsel's reasons for not presenting the evidence," the petitioner failed to rebut the "presum[ption] that 'counsel's conduct [fell] within the wide range of reasonable professional assistance' guaranteed by the Constitution." 303 F.3d 720, 749 (6th Cir. 2002) (quoting *Bell v. Cone,* 535 U.S. 685, 702 (2002)). Accordingly, having failed to establish why counsel did not call these witnesses, Petitioner has not overcome the "strong presumption" that his attorney's decision was based on "sound trial strategy." *Strickland*, 466 U.S. at 689.

Claims 5 and 8 are therefore **DENIED**.

For all of these reasons, the Amended Petition is **DENIED**. The Clerk is **DIRECTED** to enter Judgment for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional

---

[3] Petitioner alleges that his failure to call Love, Cole, and Phelps to the stand in his post-conviction proceeding was the result of the ineffective assistance of post-conviction counsel. He argues that the failure should therefore be excused under *Martinez*. Pet'r's Reply, at 23, 25. The argument is rejected; *Martinez* applies to excuse a procedural default, not a default of proof. *See Vizcaino-Ramos v. Lindamood*, 2017 WL 5163588, at *5–6 (W.D. Tenn. Nov. 7, 2017) (citing *Henderson v. Carpenter*, 21 F. Supp. 3d 927, 932-33 (W.D. Tenn. 2014)).

right.  28 U.S.C. § 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[4]

**IT IS SO ORDERED.**

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 12, 2018